# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RICKY J. MCBRIDE,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-708

Black, J.

Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Ricky J. McBride brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court

on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc.

20), and plaintiff's reply (Doc. 21).

## I. Procedural Background

Plaintiff filed his original application for benefits in January 2010. His application was

denied following a hearing by Administrative Law Judge ("ALJ") Ena Weathers in a decision

dated September 20, 2012. (Tr. 123-44). Plaintiff did not appeal this decision.

Plaintiff filed his current application for DIB in November 2012, alleging disability since

March 18, 2008, due to right shoulder surgery, diabetes, high blood pressure, sinus infection,

bulging disk in lower back, pinched nerve in neck with spurs on C4-C5, hernia, and left knee

issues. That application was denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before ALJ Deanna L. Sokolski. Plaintiff

and a vocational expert ("VE") appeared and testified at the ALJ hearing. On December 22,

2014, the ALJ issued a decision denying plaintiff's DIB application. The ALJ determined that plaintiff was not disabled for the relevant time period from September 20, 2012, the date of ALJ Weathers' decision, through plaintiff's date last insured of December 31, 2013. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not
disabled. If the claimant cannot make an adjustment to other work, the claimant
is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security
Act on December 31, 2013.

2. The [plaintiff] did not engage in substantial gainful activity during the period
from his alleged onset date of March 18, 2008, through his date last insured of
December 31, 2013 (20 CFR 404.1571, *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe
impairments: a back disorder of the cervical and lumbar spine, a rotator cuff
injury that is status-post surgical repair, carpal tunnel syndrome, a hernia, diabetes
mellitus, obesity, obstructive sleep apnea, an affective disorder, and an anxiety
disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or
combination of impairments that met or medically equaled the severity of one of
the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the [plaintiff] had the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) except as follows: The [plaintiff] requires a sit/stand option that does not interfere with production; he is able to occasionally push/pull with his right upper extremity but no overhead bilateral reaching; he is able to occasionally crawl, balance, stoop, crouch, kneel, and climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; he is able to perform simple, repetitive tasks in an environment free of fast-paced production requirements, which involves only simple work-related decisions with few, if any, work place changes, but requires a job that allows for directions presented verbally and with demonstration, and can perform no work around workplace hazards such as unprotected heights and dangerous moving machinery.

6.  Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7.  The [plaintiff] was born [in] . . . 1967 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.  The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the dated last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[3]

11.  The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from March 18, 2008, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(g)).

(Tr. 25-33).

---

[2]Plaintiff's past relevant work was as an auto mechanic, a medium exertion, skilled position.   (Tr. 32, 110).

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light occupations such as hand bander, with 500 jobs regionally and 100,000 jobs nationally; a label inspector, with 200 jobs regionally and 22,000 nationally; and a silver wrapper, with 400 jobs regionally and 70,000 jobs nationally.   (Tr. 33, 112-13).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).  *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ improperly found plaintiff's testimony was not credible; (2) the ALJ failed to properly analyze plaintiff's mental impairments; (3) the ALJ failed to accord the appropriate weight to the opinion of Dr. Rao, plaintiff's treating physician; (4) the ALJ failed to comply with SSR 02-01p in not considering the impact of plaintiff's obesity on his ability to work; (5) the ALJ failed to properly evaluate plaintiff's RFC; and (6) the ALJ erred in failing to consider plaintiff's sleep apnea, which results from his obesity, and its effect on his ability to work.   (Doc. 14).

### 1.   The ALJ did not err in assessing plaintiff's credibility.

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981).  "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so."  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review."  *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ."  42 U.S.C. § 423(d)(5)(A).  Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986).  In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition.  *Id.* at 853.  If

there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id*.

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of plaintiff's doctors. *Felisky*, 35 F.3d at 1040. Additional specific factors relevant to plaintiff's allegations of pain include his daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate his pain or other symptoms; treatment other than medication plaintiff has received for relief of his pain; and any measures the plaintiff uses to relieve his pain. *Id*. at 1039-40; 20 C.F.R. § 404.1529(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish he is disabled, *Duncan*, 801 F.2d at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. § 404.1529(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id*.

At the hearing before the ALJ, plaintiff testified that he cannot "pick up a jug of milk with" his right arm since he underwent two surgeries on his right shoulder in 2008. (Tr. 59, 61, 65). Plaintiff testified that his shoulder is painful "all day long" and that he cannot reach overhead. (Tr. 72, 79). He experiences a "charley horse," and his shoulder "grinds, and pops,

and hurts all day." (Tr. 61). He noted that no specific activity brings on the pain. (Tr. 91). Plaintiff testified that he experiences pain raising and lowering his head. (Tr. 89).

Plaintiff also testified to suffering from daily chronic back pain. When questioned about his treatment, plaintiff replied that he had been using a TENS unit for a couple of years and narcotic medication. (Tr. 73, 75-76). He wore the TENS unit to the hearing and he testified his medications make him tired. (Tr. 59, 71). Plaintiff testified he was able to sit for 15 to 20 minutes, stand for 15 to 20 minutes, and walk a distance of one block. (Tr. 78-79). Plaintiff also testified that he constantly changes positions while sitting and that his legs go "numb" after sitting for 15 minutes. (Tr. 78, 87).

Additionally, plaintiff testified that he was depressed by not being able to support his family. (Tr. 66). Plaintiff testified he took medication for his depression, but his mood remained the same. (Tr. 71).

The ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. The ALJ determined that: (1) plaintiff's allegations as to his symptoms and limitations from back pain were inconsistent with the medical evidence of record; (2) the medical evidence regarding his other physical impairments did not support the conclusion that these conditions were disabling; (3) the medical evidence of plaintiff's mental impairments showed only moderate symptoms, which were not work preclusive; and (4) plaintiff gave inconsistent statements about his daily activities and substance abuse. (Tr. 29-30).

Plaintiff argues the ALJ erred in evaluating his credibility. (Doc. 14 at 5-10). Plaintiff

contends the ALJ erroneously relied on Global Assessment of Functioning (GAF)[1] scores

assigned by plaintiff's treating social workers; the ALJ failed to consider plaintiff's persistent

efforts to obtain pain relief; plaintiff's testimony was consistent with the medical records and the

assessment of his treating physician; the ALJ erroneously attributed complications of diabetes to

plaintiff's non-compliance with treatment; and the ALJ erred by relying on her own intuition, as

well as the intuition of various consultative examiners, instead of the medical evidence of record

in assessing plaintiff's credibility.

As an initial matter, plaintiff does not dispute the inconsistencies cited by the ALJ in

evaluating his credibility. The ALJ reasonably determined that plaintiff's inconsistent reports

regarding his daily activities and his substance abuse undermined his credibility. (Tr. 30). The

ALJ's findings are supported by substantial evidence. (Tr. 30, citing Tr. 275, 295, 282, 381,

446).

Plaintiff challenges the ALJ's reliance on the GAF scores reported by plaintiff's social

workers in finding plaintiff was only moderately impaired by his mental impairments. In

November 2012, a social worker diagnosed plaintiff with Obsessive Compulsive Disorder and

assigned him a GAF score of 51. (Tr. 453-54). In October 2014, plaintiff was diagnosed with

major depressive disorder, mild to moderate, without psychotic features and he was assessed with

a GAF of 60. (Tr. 653). A GAF score of 51-60 indicates "[m]oderate symptoms." *Kornecky*

*v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006). Plaintiff argues the ALJ should

---

[1] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American
Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The
GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and
occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of
severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with
clear expectation of death). *Id.* at 34.

not have relied on these GAF scores because such scores present only a "snapshot" of an individual's functioning at a particular point in time and the DSM-V has eliminated GAF scores.

Plaintiff is correct that there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Id.* at 511. Nevertheless, the Sixth Circuit has taken a "case-by-case approach to the value of GAF scores," *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016), and the ALJ may consider GAF scores as one factor in assessing a claimant's mental functioning. *Id.*

Here, the ALJ properly referenced the GAF scores in plaintiff's medical record in assessing the reliability of plaintiff's statements. Even though GAF scores were eliminated in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-V"), which was published in 2013, the Sixth Circuit has since found that GAF scores still "may assist an ALJ in assessing a claimant's mental RFC." *Miller*, 811 F.3d at 835. The Sixth Circuit explained that "although a GAF score is 'not essential to the RFC's accuracy,' it nevertheless 'may be of considerable help to the ALJ in formulating the RFC.'" *Id.* at 836 (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). In assessing plaintiff's mental functioning and the reliability of his allegations of disabling mental impairments, the ALJ properly considered plaintiff's GAF scores together with plaintiff's "solid work history," which was not "indicative of long-standing psychiatric problems," and the fact that plaintiff had never been hospitalized for his mental impairments. (Tr. 30). The Court finds no error in this regard.

Plaintiff also argues the ALJ "ignored" his persistent efforts to obtain pain relief in assessing his credibility. Contrary to plaintiff's argument, the ALJ thoroughly set forth in her decision plaintiff's medical history, including his treatment modalities. (Tr. 25-26, 29, 31).

10

There is no indication in the ALJ's decision that she ignored plaintiff's treatment and attempts to find pain relief, and plaintiff has failed to point to any records in this regard that the ALJ failed to consider.

Next, plaintiff contends his testimony regarding symptoms and limitations is consistent with the medical evidence. Plaintiff points to the objective and clinical medical evidence as support for the limitations he alleges. Plaintiff argues that this evidence establishes diagnoses of myelopathy and lumbar radiculitis, as well as degeneration of the cervical and lumbar spines. (Doc. 14 at 7-8).

There is no dispute that plaintiff suffers from underlying medical conditions that could reasonably be expected to cause his alleged symptoms. The question, however, is whether the objective medical evidence confirms the severity of the pain alleged by plaintiff, or whether plaintiff's underlying medical impairments are severe enough that they can reasonably be expected to produce his allegedly disabling pain. *Duncan*, 801 F.2d at 853. The ALJ reasonably determined that the medical evidence does not support plaintiff's allegations of disabling impairments.

As the ALJ noted, the objective medical evidence during the relevant time period of September 2012 to December 31, 2013, shows mild abnormalities and generally normal clinical findings that are not indicative of disabling impairments. (Tr. 29). A November 2012 cervical MRI showed only mild stenosis at C5-6 and mild degenerative changes at C3-4 and C4-5 with no stenosis. (Tr. 478). A May 2013 x-ray of the lumbar spine showed mild facet arthrosis at L4-S1, with suspected spondylolysis of L5 with minimal grade 1 anterolisthesis. (Tr. 595). Evaluation of plaintiff's shoulder in October 2012 revealed active range of motion bilaterally at

45 degrees. Plaintiff exhibited no atrophy, crepitus, or deformity. Plaintiff had no spinous, paraspinous, trapezial, or peri-scapular tenderness. His gait was non-antalgic; he had decreased sensation on the left forearm and fingers but sensory exam was otherwise normal; no edema was present; and deep tendon reflexes were preserved and symmetric. (Tr. 475). In January 2013, plaintiff exhibited moderately reduced movement in his lumbar spine and tenderness on palpation. (Tr. 488). An examination in May 2013 showed no muscular deficits, negative straight-leg raise bilaterally, and full sensation. Plaintiff was able to walk on his heels and tiptoes, and he exhibited 5/5 knee flexion and extension, dorsiflexion, and plantar flexion. Extensor hallucis longus and hip flexion were a "little bit" diminished, but plaintiff had normal sensation to light touch from L1 through S1. (Tr. 588-90). The objective tests and treatment records cited by the ALJ show mild abnormalities and relatively benign clinical findings, which do not support the severity of the pain alleged by plaintiff. Substantial evidence supports the ALJ's finding that plaintiff's description of the limitations caused by his neck, shoulder, and back impairments were not fully credible.

To the extent plaintiff contends the ALJ erroneously attributed some of the complications of diabetes to non-compliance with treatment, plaintiff has failed to identify a transcript reference showing where the ALJ made any such finding. In addition, the Court's own review fails to reveal that the ALJ discredited any of plaintiff's testimony about his limitations due to non-compliance with treatment.

Finally, plaintiff contends "[t]he ALJ's evaluation is not based on medical evidence of record" and "[h]er opinion is based on nothing more than her own intuition." (Doc. 14 at 9). In

12

light of the evidence described above and discussed by the ALJ in her decision, the Court finds no basis in the record for plaintiff's argument.[2]

Here, the ALJ's credibility determination is substantially supported by the record and is entitled to deference. The ALJ gave valid reasons for discounting plaintiff's credibility, and those reasons are substantially supported by the record. Plaintiff's first assignment of error should be overruled.

### 2. The ALJ did not err in failing to comply with the required technique for analyzing mental impairments under 20 C.F.R. § 404.1520a.

Plaintiff sought mental health treatment at Life Point Solutions in November 2012. (Tr. 435-55). Plaintiff reported financial problems and increased stress due to finances; he stated his step-father had died two months prior and "his passing has been hard" on him; and he reported obsessive/compulsive behaviors. (Tr. 452). The intake social worker diagnosed plaintiff with Obsessive Compulsive Disorder and assigned him a GAF score of 51. (Tr. 453-54). During the relevant time period, plaintiff attended four sessions of individual therapy. (Tr. 643, 647-49).

In March 2013, plaintiff's social worker completed a daily activities questionnaire on behalf of the state agency. (Tr. 281-82). When asked about plaintiff's ability to care for his own needs (including sustainability, work pace, quality, and effectiveness), his social worker reported that plaintiff possesses adequate skill and ability in food preparation, household chores, personal hygiene, shopping, driving, banking and bill paying, and hobbies. Plaintiff's social worker also reported that plaintiff had good interpersonal skills. (*Id.*).

---

[2] To the extent plaintiff contends his testimony is supported by the opinions of his treating physician, this is not a basis for reversing the ALJ's credibility decision. For the reasons explained below in connection with plaintiff's third assignment of error, the ALJ's decision to give little weight to Dr. Rao's opinions is supported by substantial evidence.

Plaintiff was seen for an updated diagnostic assessment in October 2014. Plaintiff was diagnosed with major depressive disorder, mild to moderate, without psychotic features and his GAF score was assessed at 60. (Tr. 653).

Plaintiff contends the ALJ erred by not documenting in her decision that she applied the regulatory psychiatric review technique. Plaintiff alleges the ALJ was required to evaluate on a four-point scale how plaintiff's mental impairments impact his activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. (Doc. 14 at 10, citing 20 C.F.R. § 404.1520a(c)(3-4)). Plaintiff argues that the ALJ's failure to analyze his mental impairments under the psychiatric review technique warrants a remand of this case.

Contrary to plaintiff's argument, the ALJ did not fail to apply the psychiatric review technique set forth in 20 C.R.F. § 404.1520a. While not entirely clear, plaintiff appears to contend that the ALJ was required to provide her own detailed psychiatric review technique form (PRTF), rather than rely on the PRTFs completed by medical sources in the record. However, the ALJ need only incorporate the pertinent findings and conclusions in her written decision based on the technique. *See Rabbers*, 582 F.3d at 653-54 (citing 20 C.F.R. § 404.1520a(e) and Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50, 746 (Aug. 21, 2000)) (noting that prior to 2000, "an ALJ was required to complete a PRTF and append the form to the decision," but that the regulation was subsequently amended). The ALJ in this case determined that plaintiff had "mild" restriction in activities of daily living; he had "mild" difficulties in social functioning; he had "moderate" difficulties in concentration, persistence or pace: and he had experienced no repeated extended episodes of decompensation through his date last insured of December 31, 2013. (Tr. 27-28). Because the ALJ included

specific findings on the degree of plaintiff's limitation in each of the four regulatory areas in her

decision, the ALJ did not err in applying the special technique under 20 C.F.R. § 404.1520a. *Cf.*

*Rabbers*, 582 F.3d at 655 (holding that the ALJ erred under 20 C.F.R. § 404.1520a because his

decision did not include these specific findings).

Plaintiff also argues the ALJ failed to consider the limitations imposed by his mental

impairments on his ability to work. (Doc. 14 at 11). Contrary to plaintiff's argument, to

accommodate plaintiff's severe affective and anxiety disorders, the ALJ limited plaintiff to

simple, repetitive tasks in an environment free of fast-paced production requirements; work that

involves only simple work-related decisions with few, if any, work place changes; and work that

allows for directions presented verbally and with demonstration. (Tr. 28, 32). The Court

concludes that the ALJ did not err by failing to comply with the required technique for analyzing

mental impairments under 20 C.F.R. § 404.1520a or in assessing plaintiff's mental health

functioning.

### 3. Substantial evidence supports the ALJ's decision to give little weight to the opinions of Dr. Rao.

It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight. "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference."). "The

treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 at *5 (1996)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

Plaintiff began treating with Shoba Rao, M.D., a primary care physician, in 2011 to establish care. (Tr. 456-57). He was seen for diabetes follow-up and back pain in his lumbosacral spine with radiation to his left thigh and leg which he described as burning. (Tr. 457). His diagnoses included diabetes Type II, hyperlipidemia mixed, and hypertension. (*Id.*).

Due to plaintiff's complaints of lower back and left leg pain, an MRI of plaintiff's lumbar spine was ordered in December 2011, which revealed a minimal disk bulge at L3-4 and L4-5. (Tr. 461).

In February 2012, plaintiff was seen for a checkup. His physical examination was essentially normal. Dr. Rao diagnosed diabetes mellitus, uncontrolled; mixed hyperlipidemia; hypertension, benign; and low back pain. (Doc. 463).

Plaintiff was seen in April 2012 for a follow-up to an emergency room visit for prostatitis. His physical examination was essentially normal. Dr. Rao noted that plaintiff was taking Bactrim for the infection. (Tr. 466).

In July 2012, plaintiff was seen for diabetes and back pain. Plaintiff exhibited no abnormalities on physical exam. His diabetes was assessed as uncontrolled. (Tr. 469).

In August 2012, plaintiff presented to Dr. Rao's office with shoulder pain and to have "disability paper work filled out." (Tr. 470). On physical exam, plaintiff exhibited muscle

spasm in the lumbar spine and severe pain with motion. His left shoulder was tender and he had

severe pain with motion. Plaintiff was assessed with low back pain, type II diabetes, and

hyperlipidemia, mixed. Dr. Rao completed forms for plaintiff's disability hearing, which was

scheduled for the following day. (Tr. 471). Dr. Rao completed a pain assessment form in

which she opined that physical activity greatly increased plaintiff's pain and that medicinal

side-effects would severely limit plaintiff's work-place effectiveness due to distraction,

inattention, drowsiness, etc. Dr. Rao also opined that plaintiff would be absent from work 10-12

days in a 20-day calendar work month. (Tr. 868).

Dr. Rao also completed a functional capacity questionnaire in which she opined that

plaintiff's medication (Neurontin), which plaintiff takes for lumbar radiculopathy, causes fatigue,

confusion, dizziness, and drowsiness. (Tr. 869). Dr. Rao also opined that during an eight-hour

workday, plaintiff could sit or stand for less than two hours per day; that he needed to elevate his

legs while sitting; and that he could grasp, manipulate, and reach for about 10% of the time. (Tr.

869-72). Dr. Rao also listed anxiety as affecting plaintiff's physical condition and opined that

plaintiff was incapable of even "low stress" jobs due to depression and anxiety. (Tr. 870).

Plaintiff was seen in October 2012 complaining of numbness in his left arm.

Examination of his shoulder revealed active range of motion bilaterally at 45 degrees. His gait

was non-antalgic. Plaintiff had a normal sensory examination except for decreased sensation on

the left forearm and fingers. There was no edema present and deep tendon reflexes were

preserved and symmetric. (Tr. 475). Dr. Rao diagnosed plaintiff with acute cervical radiculitis

and ordered an MRI. (Tr. 476). The cervical spine MRI performed on November 2, 2012

showed a disk osteophyte complex at C5-C6 resulting in a mild left paracentral spinal canal stenosis and some degenerative changes at C3-C4 and C4-C5. (Tr. 478).

In January 2013, Dr. Rao observed moderately reduced movement and tenderness on palpation of plaintiff's lumbar spine. Plaintiff was diagnosed with lumbar radiculitis, continued on Neurontin and Vicodin, and given a prescription for a handicapped parking sticker. (Tr. 488).

In April 2013, plaintiff saw Dr. Rao for his diabetes and hypertension. (Tr. 490-92). Dr. Rao noted that plaintiff was receiving neck and back therapy at Drake Hospital. (*Id.*).

A May 2013 x-ray of the lumbar spine showed mild facet arthrosis at L4-S1, with suspected spondylolysis of L5 with minimal grade 1 anterolisthesis. (Tr. 595). That same month, plaintiff was examined by physician assistant Keith Zurmehly, who found no muscular deficits and full sensation. Plaintiff was able to walk on his heels and tiptoes, and he exhibited 5/5 knee flexion and extension, dorsiflexion, and plantar flexion. Extensor hallucis longus and hip flexion were "a little bit diminished," but Mr. Zurmehly noted this was likely secondary to pain. Straight leg raises were negative bilaterally. Plaintiff exhibited normal sensation to light touch from L1 through S1. (Tr. 588-90).

In June 2013, Dr. Rao completed a physical capacity form on behalf of plaintiff's disability insurance carrier in which she opined that plaintiff could sit, stand, walk, and drive occasionally for about one-third of an 8-hour workday; he could only occasionally lift 10 pounds; and he could never perform postural requirements. Dr. Rao commented that plaintiff was "not able to work." (Tr. 606-07).

The ALJ noted that Dr. Rao's August 2012 assessment of plaintiff's pain would prevent him from being able to engage in work activity for an 8-hour workday. The ALJ also noted that Dr. Rao's June 2013 medical source statement limited plaintiff to less than sedentary work and that Dr. Rao opined that plaintiff was "not able to work." (Tr. 30, citing Tr. 606-07, 869-72). The ALJ declined to give controlling weight to Dr. Rao's opinions "because they are not well-supported by clinical and laboratory diagnostic techniques." (Tr. 31). Instead, the ALJ gave little weight to the August 2012 and June 2013 opinions of Dr. Rao, finding that the objective medical evidence did not support the extreme limitations Dr. Rao assessed. (*Id.*). The ALJ also found Dr. Rao's statement that plaintiff was "not able to work" to be problematic given that Dr. Rao has no identifiable vocational expertise upon which to base this opinion. (*Id.*).

Plaintiff contends the ALJ improperly weighed Dr. Rao's August 2012 and June 2013 opinions of disability. Plaintiff argues the ALJ "completely disregard[ed] the agency's own regulation when rendering" her decision. (Doc. 14 at 12). Plaintiff characterizes as "rather heavy handed" the ALJ's finding that Dr. Rao "has no identified vocational expertise upon which to base" her opinion that plaintiff was unable to work. *Id.* Plaintiff further contends the ALJ should have recontacted Dr. Rao for clarification of her opinions when the basis for such opinions is not clear. *Id.* Plaintiff also asserts the ALJ failed to discuss a medical opinion from a qualified medical source that was contrary to Dr. Rao's and instead impermissibly relied on her own interpretation in assessing Dr. Rao's opinions. (*Id.* at 13). Plaintiff asserts that Dr. Rao, as plaintiff's treating physician, was in the best position to render an opinion on plaintiff's pain levels and ability to work. *Id.*

The ALJ provided "good reasons" for giving little weight to Dr. Rao's opinions and those reasons are substantially supported by the record. First, plaintiff's argument that the ALJ disregarded the agency's own regulations in assessing Dr. Rao's opinions is simply not accurate. The ALJ acknowledged that Dr. Rao was a treating source and the ALJ correctly cited the controlling regulation and Social Security Ruling in her decision. (Tr. 30, citing 20 C.F.R. § 404.1527(c) and SSR 96-2p). The ALJ properly assessed Dr. Rao's opinions for controlling weight, as required by the regulations and Sixth Circuit case law. Upon finding that Dr. Rao's opinions were not well-supported by the clinical and laboratory evidence, the ALJ went on to weigh Dr. Rao's opinions according to the appropriate regulatory factors: the length, nature, and extent of the treatment relationship and the frequency of examination; the supportability of the opinions and consistency of the opinions with the record as a whole; the medical specialty of Dr. Rao; and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544. The ALJ did not "disregard" the controlling regulations and authority.

Second, to the extent the ALJ gave little weight to Dr. Rao's opinion that plaintiff was "not able to work," the ALJ justifiably discounted Dr. Rao's opinion. An ALJ is not required to accept a physician's conclusion that her patient is disabled. 20 C.F.R. § 404.1527(d)(1)(3). Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a physician's opinion that her patient is disabled will not be given "any special significance." *Id. See also Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

Third, the ALJ reasonably determined that Dr. Rao's opinions that plaintiff's pain would prevent him from working a full 8-hour day and that plaintiff has the functional capacity for less than sedentary work are not well-supported by Dr. Rao's own records or the other record evidence. Dr. Rao did not provide any explanation for her June 2013 opinion, aside from noting that plaintiff had an MRI of the lumbar spine in May 2013 that showed "degenerative changes." (Tr. 606). However, the Sixth Circuit has held that an ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992)).

As the ALJ also noted, Dr. Rao's August 2012 opinion was made outside the relevant time period of September 20, 2012 through December 31, 2013. Nonetheless, the ALJ addressed that opinion in her decision and thoroughly explained why she gave only limited weight to it. The ALJ reasonably found that Dr. Rao's treatment notes do not support the disabling limitations which Dr. Rao imposed. (Tr. 31). Plaintiff was seen on five occasions in 2012 and often went months without complaining of back pain to Dr. Rao. In February, April, and July, plaintiff's physical examinations were essentially normal. (Tr. 463, 466, 469). When seen in August, plaintiff complained of shoulder pain and the need to have disability paperwork completed. (Tr. 470). On physical exam, plaintiff exhibited muscle spasm in the lumbar spine, left shoulder tenderness, and severe pain with motion in the back and shoulder. (Tr. 471). In October, however, plaintiff exhibited active range of motion bilaterally in his shoulders; his gait was non-antalgic; he had decreased sensation on the left forearm and fingers but his sensory examination was otherwise normal; no edema was present; and deep tendon reflexes were

22

preserved and symmetric. (Tr. 475). Dr. Rao diagnosed plaintiff with acute cervical radiculitis and ordered an MRI of the cervical spine, which showed disk osteophyte complex at C5-C6 resulting in a mild left paracentral spinal canal stenosis and mild degenerative changes at C3-C4 and C4-C5 without stenosis. (Tr. 478). In January 2013, plaintiff had some tenderness upon palpation, but his range of motion was only moderately reduced. (Tr. 488). In April 2013, Dr. Rao did not document any issues with back pain or movement on examination. (Tr. 490). Finally, the only clinical and objective findings cited by Dr. Rao in support of her August 2012 opinion were decreased strength and sensation in plaintiff's left leg. (Tr. 869). In view of the minimally abnormal clinical and objective findings set forth in Dr. Rao's own treatment notes, the ALJ reasonably concluded that the treatment records did not support the extreme limitations imposed by Dr. Rao.

The ALJ also reasonably determined that Dr. Rao's opinions were not consistent with the other substantial evidence of record. Plaintiff argues that the ALJ failed to discuss a medical opinion from another qualified medical source that was contrary to Dr. Rao's opinions; in fact, the ALJ noted that in March 2013, state-agency physician Rannie Amri, M.D., adopted the September 2012 RFC findings of ALJ Weathers for a reduced range of light work. (Tr. 152-53). Dr. Amri reasoned that "[a]lthough [plaintiff] was found to have mild cervical DDD [degenerative disc disease] and mild central canal stenosis, his gross physical exam remains unchanged" and the evidence did not mandate new limitations beyond those imposed by ALJ Weathers. (Tr. 153). In May 2013, state-agency physician Elizabeth Das, M.D., confirmed Dr. Amri's opinion. (Tr. 167-68). The ALJ gave these opinions some weight but ultimately determined that plaintiff was more limited in light of the additional evidence received after Judge

Weathers' decision and reduced plaintiff's RFC accordingly. (Tr. 30). The ALJ also noted that May 2013 lumbar x-rays showed only mild facet arthrosis at L4-S1, with suspected spondylolysis of L5 with minimal grade 1 anterolisthesis (Tr. 595) and a physical examination that same month showed largely normal clinical findings: plaintiff had no muscular deficits and full sensation; he was able to walk on his heels and tiptoes; he exhibited 5/5 knee flexion and extension, dorsiflexion, and plantar flexion; his extensor hallucis longus and hip flexion were "a little bit diminished"; his straight leg raises were negative bilaterally; and he exhibited normal sensation to light touch from L1-S1. (Tr. 588-90). The ALJ reasonably noted that the other medical evidence of record did not support Dr. Rao's conclusion of disability. *Cf. Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) (plaintiff failed to point to any treatment notes showing treating physician recommended restrictions similar to those listed in support of the disability claim) (citing *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (treating doctor's "failure to catalog such restrictions in his treatment notes so as to maintain an accurate medical history calls into question whether [the claimant] was in fact so restricted.")).

Finally, plaintiff alleges the ALJ was required to recontact Dr. Rao for clarification under Social Security Ruling 96-5p. Social Security Ruling 96-5p seeks to "clarify Social Security Administration policy on how we consider medical source opinions on issues reserved to the Commissioner, including . . . whether an individual is 'disabled' under the Social Security Act." Soc. Sec. R. 96-5p, 1996 WL 374183, at *1 (Jul. 2, 1996).[3] Under this Ruling, the ALJ must "make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear."

---

[3] The Sixth Circuit has assumed without deciding that "Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir.

*Id.* at *2. In this case, the ALJ gave no indication that he found the bases of Dr. Rao's findings unclear. Rather, the ALJ found those bases were insufficient to support Dr. Rao's findings. (Tr. 30-31). "[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician." *Ferguson*, 628 F.3d at 274 (quoting *Poe v. Comm'r of Soc.Sec.*, 342 F. App'x 149, 156 n. 3 (6th Cir. 2009)). Dr. Rao's opinions were rejected not because their bases were unclear, but because they were not supported by Dr. Rao's treatment records, the objective and clinical evidence, and other evidence of record.[4] Accordingly, plaintiff's statement of error concerning the ALJ's assessment of Dr. Rao's opinions should be overruled.

### 4. The ALJ did not fail to consider the impact of plaintiff's obesity.

Plaintiff argues the ALJ erred by failing to consider the impact of plaintiff's obesity on his ability to work in accordance with SSR 02-01p. (Doc. 14 at 14-15). He alleges that "SSR 02-01p certainly contemplates the effects of obesity upon a claimant suffering with severe back pain, obstructive sleep apnea and diabetes mellitus. Just sitting 15 minutes results in pain and numbness radiating down his lower extremities." (Doc. 14 at 14, citing Tr. 868-72). Plaintiff alleges it is clear the ALJ failed to consider the effect of obesity on his functioning because she

---

2010) (citing *Wilson*, 378 F.3d at 549).

[4] The Sixth Circuit in *Ferguson* noted that the requirements of SSR 96-5p "parallel those set forth in 20 C.F.R. § 404.1512(e) and 20 C.F.R. § 416.912(e), which also recognize a duty to recontact in cases where the evidence from the treating physician is inadequate to determine disability and contains a conflict or ambiguity requiring clarification." 628 F.3d at 273 n.2. Sections 404.1512(e) and 416.912(e) were amended effective March 26, 2012, and the provisions for recontacting a treating physician or other medical source are now found at 20 C.F.R. §§ 404.1520b(c)(1) and 416.920b(c)(1). The regulations as amended specify that recontacting a treating physician or other medical source is permissive, not mandatory. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) ("We *may* recontact your treating physician, psychologist, or other medical source.") (emphasis added).

determined that plaintiff was capable of crawling, stooping, crouching, kneeling, and climbing ramps and stairs. (Doc. 14 at 15).

SSR 02-01p addresses the evaluation of obesity in the disability process. Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002). SSR 02-01p recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. SSR 02-01p, 2000 WL 628049, at *6. The Ruling insures that the Commissioner will consider a claimant's obesity in performing steps two through five of the sequential analysis. SSR 02-1p, 2000 WL 628049, at *3. SSR 02-01p does not mandate a particular mode of analysis for an obese claimant. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 412 (quoting SSR 02-0lp). *See also Young v. Comm'r of Soc. Sec.*, No. 3:09 CV 1894, 2011 WL 2182869, at *7 (N.D. Ohio June 6, 2011) ("The Sixth Circuit requires the ALJ to mention obesity either expressly or indirectly where the record includes evidence of obesity's effects on the claimant's impairments.").

In light of the regulations requiring that a claimant "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about your medical impairment(s) and . . . its effect on your ability to work on a sustained basis," 20 C.F.R. § 404.1512, a claimant relying on obesity to establish disability should provide evidence that obesity affects his ability to work. *Snyder v. Comm'r of Soc. Sec.*, No. 2:10-CV-00821, 2012 WL 27302, at *8 (S.D. Ohio Jan. 5, 2012) (Report and Recommendation), *adopted*, 2012 WL 871202 (S.D. Ohio Mar. 13,

2012) (citing *Cranfield v. Comm'r, Soc. Sec.,* 79 F. App'x 852, 857-58 (6th Cir. 2003) (finding

that even though physician's reports indicated obesity, the ALJ was not obligated to address the

claimant's obesity in light of the claimant's failure to provide evidence that her obesity was a

significant impairment that affected her ability to work); *May v. Astrue,* No. 4:10CV1533, 2011

WL 3490186, at *6 (N.D. Ohio June 1, 2011) (holding that the ALJ had no obligation to address

a claimant's obesity when, despite a diagnosis of obesity in the record, the claimant did not carry

burden of demonstrating there were any "functional limitations ascribed to the condition[ ]")).

Here, the ALJ's obesity evaluation is substantially supported by the record. The ALJ

determined that plaintiff's obesity is a severe impairment. (Tr. 25). The ALJ acknowledged

that while there is no listing pertaining to obesity, she considered obesity "in combination with

the [plaintiff's] other impairments in accordance with Social Security Ruling 02-1p." (Tr. 27).

The ALJ also determined that "[t]he exertional, postural, and environmental limitations

accommodate the [plaintiff's] musculoskeletal impairments along with his obesity" and other

impairments. (Tr. 32). Although the ALJ's obesity finding was brief, plaintiff has not directed

the Court to any portion of the record which indicates that it was unsupported. Nor does there

appear to be medical evidence which shows that obesity exacerbates plaintiff's other

impairments. Dr. Rao did not list obesity on any of the forms she completed assessing

plaintiff's functional capacity so as to indicate obesity was a contributing factor to the limitations

Dr. Rao noted. The ALJ was not required to assume in the absence of such evidence that

obesity exacerbated plaintiff's impairments and impacted his ability to perform basic work

activities. *See* SSR 02-01p, 2000 WL 628049, at *6 (the ALJ "will not make assumptions about

the severity or functional effects of obesity combined with other impairments.")). Plaintiff's

assignment of error should be overruled.

### 4.  The ALJ did not fail to properly evaluate plaintiff's RFC.

Plaintiff contends the ALJ failed to properly evaluate his RFC because his physical
condition is well-documented and his treating physician, Dr. Rao, reviewed all of plaintiff's
medical records in assessing his functional capacity.   Plaintiff alleges the ALJ "effectively
ignored" Dr. Rao's assessment and there is no contrary opinion from an examining consultant.
(Doc. 14 at 16).   Plaintiff further alleges that his testimony was consistent with his treating
physician's reports and hospital records, but the ALJ erroneously found plaintiff's testimony to
be only partially credible.   (*Id.*).

Plaintiff's fifth assignment of error essentially rehashes the arguments he made in
connection with his other assignments of error.   The ALJ did not "ignore" Dr. Rao's opinions
but reasonably discounted the opinions as unsupported by the objective and clinical evidence of
record.   As explained above, in evaluating Dr. Rao's opinions the ALJ reasonably relied on the
record as a whole, including Dr. Rao's own treatment notes, the MRI and x-ray evidence, the
physical examination findings of record, and the opinions of the state agency medical
consultants.   Finally, for the reasons set forth above, the ALJ's credibility finding is supported
by substantial evidence and should not be disturbed.   Plaintiff's fifth assignment of error is
without merit.

### 6.  The ALJ did not err in considering plaintiff's sleep apnea on his ability to work.

Plaintiff alleges the ALJ erred in failing to consider his sleep apnea, which results from
his obesity, and its effect on his ability to work.   (Doc. 14 at 17).   He alleges the ALJ failed to
explore plaintiff's resulting chronic fatigue on his ability to engage in substantial gainful

employment. (*Id.*).

Contrary to plaintiff's argument, the ALJ specifically considered plaintiff's sleep apnea in assessing his functional capacity. The ALJ found plaintiff's obstructive sleep apnea to be a severe impairment (Tr. 25) and noted that plaintiff used a CPAP machine. (Tr. 26). The ALJ further determined that plaintiff's obstructive sleep apnea was not of listing level severity. (Tr. 27). In assessing plaintiff's RFC, the ALJ specifically considered plaintiff's sleep apnea, but noted that most of the evidence relating to plaintiff's obstructive sleep apnea dates from 2014, which is after the date last insured (December 31, 2013). (Tr. 29; *see* Tr. 771, 782, 802-806). Nonetheless, the ALJ stated that the exertional, postural, and environmental limitations set forth in the RFC accommodate plaintiff impairments, including his obstructive sleep apnea. (Tr. 32). The ALJ clearly did not fail to consider the impact of plaintiff's sleep apnea on his ability to function.

Moreover, while the medical evidence shows, and the ALJ acknowledged, that plaintiff suffers from obstructive sleep apnea, there is no medical evidence showing that plaintiff's sleep apnea causes any specific functional impairments. To the extent plaintiff contends the January 2014 sleep study was positive for forgetfulness and decreased concentration, plaintiff does not indicate why the ALJ's RFC limitations for only simple, consistent, relaxed pace tasks do not reasonably accommodate these symptoms. Plaintiff appears to argue that the fatigue he alleges is consistent with sleep apnea, but as discussed above, the ALJ reasonably determined that plaintiff's subjective allegations were not fully credible. The ALJ did not fail to consider plaintiff's sleep apnea in assessing his functional abilities. This assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 8/7/17

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RICKY J. MCBRIDE,                                  Case No. 1:16-cv-708
          Plaintiff,                                       Black, J.
                                                           Litkovitz, M.J.

          vs.

COMMISSIONER OF
SOCIAL SECURITY,
          Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.    This period may be extended further by the Court on

timely motion for an extension.    Such objections shall specify the portions of the Report

objected to and shall be accompanied by a memorandum of law in support of the objections.    If

the Report and Recommendation is based in whole or in part upon matters occurring on the

record at an oral hearing, the objecting party shall promptly arrange for the transcription of the

record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems

sufficient, unless the assigned District Judge otherwise directs.    A party may respond to another

party's objections **WITHIN 14 DAYS** after being served with a copy thereof.    Failure to make

objections in accordance with this procedure may forfeit rights on appeal.    *See Thomas* v. *Arn,*

474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).